# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| EIG ENERGY FUND XIV, L.P., et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 16-cv-00333 (APM) |
| PETRÓLEO BRASILEIRO S.A., et al., | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Petróleo Brasileiro S.A.'s Motion to Stay Pending Arbitration. *See* Def.'s Mot. to Stay, ECF No. 100 [hereinafter Def.'s Mot. to Stay]. For the reasons that follow, Defendant's Motion is denied as untimely and on the merits.

I.

A litigant cannot sit on its right to arbitrate. In this Circuit, "[a] defendant seeking a stay pending arbitration under Section 3 [of the Federal Arbitration Act] who has not invoked the right to arbitrate on the record at the first available opportunity, typically in filing his first responsive pleading or motion to dismiss, has presumptively forfeited that right." *Zuckerman Spaeder LLP v. Auffenberg*, 646 F.3d 919, 922 (D.C. Cir. 2011). To overcome this presumption, a defendant must show "his delay did not prejudice his opponent or the court." *Id.* at 923.

A.

Defendant here did not invoke its right to arbitrate at the "first available opportunity." That would have been when Defendant filed its motion to dismiss nearly three years ago, on August 12, 2016. *See* Def.'s Mot. to Dismiss, ECF No. 58. Defendant moved to dismiss on multiple grounds, but mandatory arbitration was not one of them. *See generally* Def.'s Mem. of

P. & A. in Supp. of Def.'s Mot. to Dismiss, ECF No. 58-1 [hereinafter Def.'s Mot. to Dismiss Mem.]. Defendant only asserted its right to arbitrate for the first time more than 30 months later, on December 4, 2018, by identifying "mandatory arbitration pursuant to an agreement" as one of its affirmative defenses in its Answer. *See* Def.'s Answer and Affirmative Defenses, ECF No. 91, at 18. Defendant did not, however, actually move to compel arbitration for another four months, filing its Motion to Stay on April 5, 2019. *See* Def.'s Mot. to Stay. *Zuckerman Spaeder*'s presumption of forfeiture therefore applies here. *See Kelleher v. Dream Catcher, LLC*, 729 Fed. Appx. 4, 6 (D.C. Cir. 2018) (finding that the presumption of forfeiture applied when the defendant moved to stay proceedings and compel arbitration six months after it removed the case to federal court and after it filed an answer that did not invoke its right to arbitrate).

Defendant's attempt to avoid the presumption is unpersuasive. Defendant argues that it invoked its right to arbitrate at the "first available opportunity" when it filed its Answer and then moved to vindicate that right "just weeks" after the Supreme Court denied its petition for writ of certiorari. *See* Def.'s Mem. of P&A in Supp. of its Mot. to Stay, ECF No. 100-1 [hereinafter Def.'s Mem.], at 1, 16–18. The Supreme Court's decision ended more than two years of litigation over whether Defendant was completely immune from suit under the Foreign Sovereign Immunities Act. This court and the D.C. Circuit held that it was not. *See EIG Energy Fund XIV, L.P. v. Petróleo Brasileiro S.A.*, 246 F. Supp. 3d 52 (D.D.C. 2017), aff'd, 894 F.3d 339 (D.C. Cir. 2018), cert. denied, 139 S. Ct. 1324 (2019). Defendant insists that litigating its immunity defense to its conclusion before invoking its right to arbitrate did not result in forfeiture because "[t]o hold otherwise would encourage additional and unnecessary efforts be expended at the early stages of litigation: parties would need to brief arguments regarding the applicability of arbitration clauses when other arguments stand as a potential bar to judicial proceedings in general." Def.'s Mem. at

17–18. Defendant also contends that "asserting foreign sovereign immunity provides an additional strong policy reason not to find forfeiture here." *Id.* at 18. Requiring sovereign entities to raise their arbitration right before a final ruling on immunity, Defendant says, "would directly undercut the core purpose of foreign sovereign immunity." *Id.*

Defendant's argument is disingenuous. Defendant would make it seem that its motion to dismiss focused solely on asserting sovereign immunity and left no room for any other arguments. Nothing could be further from the truth. In addition to seeking dismissal on immunity grounds, Defendant moved to dismiss based on *forum non conveniens*, lack of standing, and for failure to state a claim. Defendant devoted more than half of its brief to these arguments. *See* Def.'s Mot. to Dismiss Mem. at 9–17, 26–45. It is hard to conceive how requiring Defendant to invoke its right to arbitrate at the same time it raised various jurisdictional and non-jurisdictional grounds for dismissal would have caused it to expend "additional and unnecessary" efforts at the early stages of this litigation. Def.'s Mem. at 17. Surely, Defendant could have devoted some space to asserting a claimed right that, if recognized, would have as effectively removed it from the United States courts as the claim of sovereign immunity.

But there is more. Defendant could have moved to arbitrate months before the Supreme Court ruled on its petition. After the D.C. Circuit denied en banc review, the matter returned to this court when the mandate issued on October 9, 2018. *See* Mandate, ECF No. 83. Once here, Defendant immediately could have moved for a stay of these proceedings and sought to compel arbitration. The court had jurisdiction to do so. *See Johnson v. Bechtel Assocs. Prof'l Corp., D.C.*, 801 F.2d 412, 415 (D.C. Cir. 1986) ("Issuance of the mandate formally marks the end of appellate jurisdiction."); Hr'g Tr. 1/11/19, ECF No. 102, at 20 (Defendant acknowledging the court's jurisdiction to compel arbitration post-remand). But Defendant chose a different path. It asked

3

instead to stay this matter while its petition for writ certiorari ran its course—a stay this court would ultimately deny. *See generally* Def.'s Mot. to Stay Pending Cert. Decision, ECF No. 85; Mem. of P&A in Supp. of Def.'s Mot. to Stay, ECF No. 85-1 [hereinafter Mot. to Stay Pending Cert.]; Order, ECF No. 90.[1] All told, Defendant waited six months after the mandate issued to file its motion to compel arbitration. It therefore did not avail itself of the "first available opportunity" to assert its right to arbitrate when the matter returned to this court.[2] The presumption of forfeiture therefore squarely applies, and applying it does not undercut the "core purpose" of sovereign immunity.

B.

Defendant's attempt to overcome the presumption of forfeiture is a nonstarter. Defendant is dismissive of the costs incurred by Plaintiffs and the courts, insisting that this "litigation remains in its preliminary stages" and that the burdens imposed largely have come from its assertion of sovereign immunity. *See* Def.'s Reply in Support of Def.'s Mot., ECF No. 106 [hereinafter Def.'s Reply], at 5. The first contention is inaccurate and the second beside the point.

---

[1] To be fair, Defendant alternatively asked to extend time to answer if the court declined to stay the matter while its petition for writ of certiorari was pending. *See* Mot. to Stay Pending Cert. at 10. The court granted Defendant additional time. In its Answer, Defendant asserted its right to arbitrate as an affirmative defense, but then it waited another four months before it moved to stay and compel arbitration. The mere assertion of a right to arbitrate in an Answer is not enough, however. A defendant still must *move* to compel arbitration for the right to have effect. *See Zuckerman*, 646 F.3d at 923–24 (noting that litigation costs could have been avoided if the defendant had "filed his petition to arbitrate *and* corresponding motion for a stay eight months earlier") (emphasis added). Asserting the right to arbitrate as an affirmative defense followed by four months of silence is not the type of "invocation" "at the first opportunity" that the Circuit had in mind in *Zuckerman*. *Cf. Kelleher*, 729 Fed. Appx. at 6 (holding that a "footnote purporting to reserve the right to arbitrate" in a post-answer motion to dismiss followed by a motion to compel three months later did not satisfy *Zuckerman*).

[2] Underscoring Defendant's unreasonable delay in moving to compel arbitration is a representation it made to the court at the initial scheduling conference, held on January 11, 2019. Asked when it intended to move to compel arbitration, Defendant answered: "At this point, now that -- I mean, the Supreme Court, it's unclear exactly what's going to happen, but now that we're resuming here, we feel it's the right opportunity and the right time to make that motion, and *we're expecting to do it shortly*." *See* Hr'g Tr. 1/11/19 at 19–20 (emphasis added). Defendant, without explanation, did not file its motion for another three months.

This case is not in its early stages. After the court denied Defendant's post-remand motion to stay, the parties prepared for and conducted discovery for a four-month period before Defendant filed its motion to compel. *See* Order, ECF No. 92 (setting initial scheduling conference); Order, ECF No. 95 (setting discovery schedule). Plaintiffs, in particular, exchanged initial disclosures; served requests for production; negotiated a document production protocol; reviewed produced records; participated in multiple meet and confers in person and in writing; and prepared and issued letters of request for testimony of witnesses in Brazil. *See* Pls.' Opp'n to Def.'s Mot. to Stay, Decl. of Daniel B. Goldman, ECF No. 104-1, ¶¶ 4(a)–(l) (Plaintiffs' counsel's affidavit detailing the extent of Plaintiffs' discovery efforts during this period of time). Plaintiffs have not quantified these costs, but they are no doubt substantial. Had Defendant moved to stay and compel arbitration when this matter returned from the Court of Appeals—let alone done so when it moved to dismiss years earlier—these costs would have been avoided.

Nor does it help Defendant that a significant portion of the costs incurred by Plaintiffs and the courts before it moved to compel were incurred due to prosecuting its sovereign immunity defense. Had Defendant moved to arbitrate contemporaneously with its motion to dismiss, the costs incurred by and before this court would have been largely the same. Plaintiffs and the appellate courts, however, would have avoided the costs associated with Defendant's direct appeal, request for en banc review, and petition for writ of certiorari. The resources expended during those proceedings is no small matter.

The court also acknowledges the ultimate prejudice Plaintiffs could suffer were the court to stay this matter and compel arbitration: dismissal of their claim on statute of limitations grounds. In opposing the motion to dismiss, Plaintiffs offered the expert declaration of a Brazilian law expert, Professor José Rogério Cruz e Tucci. Professor Tucci opined that, under Brazilian law,

5

Plaintiffs' fraud-in-the-inducement claim might be time barred due to uncertainty under Brazilian law as to when such a claim accrues. *See EIG Energy Fund XIV*, 246 F. Supp. 3d at 74. Plaintiffs renew Professor Tucci's concern here.

Defendant is dismissive of the risk posed to Plaintiffs' claims if compelled to arbitrate in Brazil. Defendant asserts that, even if an arbitrator in Brazil were to find Plaintiffs' claims time barred, "Plaintiffs still could return to this Court and seek to have it adjudicate Plaintiffs' claims." Def.'s Reply at 4–5 n.3. That position no doubt provides cold comfort to Plaintiffs. Defendant does not concede that Plaintiffs' claims are tolled under Brazilian law. Nor does Defendant offer any promise that, if the claims were deemed time barred in Brazil, it would not raise the same defense before this court. Defendant has said nothing that would dispel the limitations risk that Plaintiffs face in a Brazilian forum.

Accordingly, Defendant has not overcome the presumption of forfeiture.

II.

Not only did Defendant forfeit its right to arbitrate in this case, it also waived it. Unlike forfeiture, which requires no element of intent, waiver is an "intentional relinquishment or abandonment of a known right." *See Zuckerman*, 646 F.3d at 922 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). Defendant here candidly acknowledges that it has done a complete 180 on whether the parties' dispute is subject to arbitration. *See* Def.'s Mem. at 17 n.9 (acknowledging that its position on arbitration "has shifted in the time between the filing of its Motion to Dismiss and its Answer"). Defendant in its Motion to Dismiss took the position that the arbitration agreement contained in the controlling Investment Agreement *did not* apply. *See* Def.'s Mot. to Dismiss Mem. at 8. Now, Defendant says, because various arbitrators in Brazil have ruled that disputes similar to the one here between investors and Defendant are arbitrable, it "accepts

6

that the Agreement requires claims such as those—and claims such as Plaintiffs have asserted here—to be resolved via arbitration in Brazil." Def.'s Mem. at 17 n.9. Plaintiffs call this change in position "gamesmanship." Pls.' Mem. of P&A in Opp'n to Def.'s Mot., ECF No. 104, at 3, 20. The court simply calls it waiver. *See SuperMedia v. Affordable Elec., Inc.*, 565 Fed. App'x 144, 148 (3d Cir. 2014) (finding that defendant's "midstream about-face on the applicability of a contracted-for arbitration provision" supported a finding of waiver); *MidAtlantic Int'l, Inc. v. AGC Flat Glass N. Am., Inc.*, No. 2:12CV169, 2014 WL 504701, at *5 (E.D. Va. Feb. 7, 2014) (holding that party had "explicitly waived any right to enforce the arbitration clause" when "early in the proceedings" the parties had informed the court that "neither side wanted to utilize arbitration").

Defendant justifies its about-face by pointing to Brazilian arbitrators' decisions affirming the arbitrability of similar disputes. Defendant calls this an "intervening change of controlling law." Def.'s Reply at 3–4 (citing *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)). Not so. Presumably, private arbitrators in Brazil, as in the United States, do not establish "controlling" law. Defendant has not suggested otherwise. In truth, Defendant simply lost on the question of arbitrability before some tribunals in Brazil, *see id.*, Decl. of Pedro Jardim de Paiva Barroso, ECF No. 105-4 (under seal) [hereinafter Barroso Decl.], ¶¶ 6–7, and now seeks to extract some benefit from those losses. Defendant cannot rely on its litigation defeats in Brazil to avoid waiver in the United States.

III.

Finally, on the present record, the court also finds that Defendant has not carried its burden of showing that the parties' dispute is subject to arbitration. A motion to compel arbitration is evaluated under the summary judgment standard of Rule 56(c), as if it were a request for "summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement

7

to arbitrate." *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008) (internal quotation marks and citation omitted). Here, the limited evidence presented suggests that the parties' dispute is not subject to arbitration.

The parties' Investment Agreement provides that "[a]ny disputes, doubts, conflicts, controversies, matters or discrepancies of any nature arising out of or related to" the Investment Agreement are subject to arbitration in Brazil. *See* Investment Agreement, ECF No. 59, at 255, § 13.12 (sealed). The parties agree that Brazilian law governs the agreement. *See* Pls.' Opp'n at 22–24; Def.'s Reply at 6.

Other than the Investment Agreement itself, Defendant offers no other evidence with its motion. In a footnote in its brief, Defendant represents that "Brazilian arbitrators have ruled that the claims brought by other [ ] investors against Petrobras should proceed [to] arbitration," Def.'s Mem. at 17 n.9, but that statement is not evidence. Nor is that representation sufficiently detailed to offer any genuine insight on the state of Brazilian law. Plaintiffs, by contrast, point to the declaration of their Brazilian law expert, Professor Tucci, who opines that, under Brazilian law, the arbitration agreement *does not* cover tort claims, like those asserted here by Plaintiffs. *See* Decl. of José Rogério Cruz e Tucci, ECF No. 62-3, ¶ 14. Professor Tucci's opinion is the only evidence before the court concerning how Brazilian law would treat the claims specifically advanced here under the arbitration agreement. Defendant therefore has not carried its burden of showing that it is entitled to an order compelling arbitration as a matter of law.

Defendant tries to cure the lack of evidence it presents by belatedly offering with its Reply a declaration from Pedro Jardim de Paiva Barroso, an employee of Defendant who is responsible for managing its litigation and arbitration *outside* of Brazil. *See* Barroso Decl. ¶ 1. Barroso summarizes the Brazilian arbitral tribunals' decisions on the question of arbitrability. *See id.* ¶¶ 5–

7. The court, however, declines to consider the Barroso Declaration. It would be fundamentally unfair accept it, as Plaintiffs have not had an opportunity to respond to its assertions. *See Lee v. District of Columbia*, 298 F. Supp. 3d 4, 10–11 (D.D.C. 2018); *Rosenberg v. U.S. Dep't of Immigration & Customs Enf't*, 956 F. Supp. 2d 32, 36 n.4 (D.D.C. 2013).

Even if the court were to consider the Barroso Declaration, it deserves little weight. Barroso does not oversee the Brazilian arbitrations, and it is not even clear whether he is a lawyer. Barroso offers no insight into the rationales of the various tribunals, and he does not attach any of their decisions.[3] Importantly, Barroso does not say whether the arbitration provisions at issue in the Brazilian matters are textually the same as the one before this court, thus making it impossible to make an apples-to-apples comparison. Finally, the arbitration results are, at best, ambiguous.

 Barroso Decl. ¶¶ 5–7. This picture hardly presents a consensus view of Brazilian law on the arbitrability of Plaintiffs' claims.

The court therefore finds that Defendant has failed to carry its burden of showing that the parties' dispute is subject to the Investment Agreement's arbitration clause.

---

[3] Defendant criticizes Professor Tucci's opinion as an "outdated statement of Brazilian law," because his opinion does not take account of these tribunals' decisions. *See* Def.'s Reply at 7–8. But Professor Tucci cannot be blamed for not updating his opinion, as these decisions are shrouded in secrecy. The decisions are not public due to confidentiality agreements, *see* Barroso Decl. ¶ 5, and Defendant has not supplied the decisions nor described them in any meaningful detail in his case.

[4] ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

9

IV.

For the foregoing reasons, Defendant's Motion to Stay Pending Arbitration, ECF No. 100, is denied.

Dated: July 30, 2019

Amit P. Mehta
United States District Court Judge